1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    GARY D. PRICE,                          No. CIV S-07-2666-MCE-CMK

12              Plaintiff,

13         vs.                                FINDINGS AND RECOMMENDATIONS

14    CITY OF CORNING, et al.,

15              Defendants.

16    _____/

17              Plaintiff, proceeding pro se, brings this civil rights action.  Pending before the

18    court is defendants' unopposed motion for summary judgment (Docs. 18, 33).  Pursuant to Local

19    Rule 78-230(c), the hearing on the motion was taken off calendar due to plaintiff's failure to file

20    a timely opposition, and the matter was submitted on the record and briefs.

21                                    I.  BACKGROUND

22              Plaintiff originally filed his complaint in the United States District Court for the

23    District of Oregon on October 1, 2007.  The District of Oregon found venue to be improper and

24    transferred the case to this court on December 11, 2007.  Plaintiff paid the full filing fee, so his

25    complaint was not screened by the court pursuant to 28 U.S.C. § 1915(e)(2).

26    / / /

1    Because plaintiff is proceeding pro se, the court is required to read his pleading

2  liberally.  See Haines v. Kerner, 404 U.S. 519, 520 (1972) (concluding that pro se pleadings are

3  held to a less stringent standard than those drafted by lawyers).  Reading plaintiff's complaint

4  liberally, he appears to allege a variety of constitutional claims based on  free speech, equal

5  protection, illegal search, and freedom of religion.  He also appears to assert claims based on

6  alleged violations of various federal criminal statutes.

7                          II.  SUMMARY JUDGMENT STANDARDS

8    Summary judgment is appropriate when it is demonstrated that there exists "no

9  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

10  matter of law."  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

11            always bears the initial responsibility of informing the district court of the
            basis for its motion, and identifying those portions of "the pleadings,
12            depositions, answers to interrogatories, and admissions on file, together
            with the affidavits, if any," which it believes demonstrate the absence of a
13            genuine issue of material fact.

14  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

15            "[W]here the nonmoving party will bear the burden of proof at trial on a

16  dispositive issue, a summary judgment motion may properly be made in reliance solely on the

17  'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed,

18  summary judgment should be entered, after adequate time for discovery and upon motion, against

19  a party who fails to make a showing sufficient to establish the existence of an element essential

20  to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.

21  "[A] complete failure of proof concerning an essential element of the nonmoving party's case

22  necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

23  should be granted, "so long as whatever is before the district court demonstrates that the standard

24  for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

25  / / /

26  / / /

1    If the moving party meets its initial responsibility, the burden then shifts to the

2  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

3  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

4  establish the existence of this factual dispute, the opposing party may not rely upon the

5  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

6  form of affidavits, and/or admissible discovery material, in support of its contention that the

7  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

8  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

9  of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

10 T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and

11 that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

12 for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

13    In the endeavor to establish the existence of a factual dispute, the opposing party

14 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

15 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

16 versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

17 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

18 genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

19 committee's note on 1963 amendments).

20    In resolving the summary judgment motion, the court examines the pleadings,

21 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

22 any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See

23 Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed

24 before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

25 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

26 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

3

1    Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

2    1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

3    show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

4    as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

5    'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

6                                           III.  DISCUSSION

7             A.        MUNICIPAL LIABILITY

8                       The only defendants named in the caption of plaintiff's complaint are the City of

9    Corning and the Corning Police Department.  Plaintiff does not specifically name any individual

10   as a defendant in this action.  The complaint claims that several officers from the Corning Police

11   Department violated his constitutional rights, including his rights to free speech, equal

12   protection, and illegal searches.  He does not allege any wrongdoing of the named defendants.

13                      Municipalities and other local government units are among those "persons" to

14   whom the federal civil rights statutes apply.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658,

15   690 (1978).  Counties and municipal government officials are also "persons" for purposes of

16   § 1983.  See id. at 691; see also Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir.

17   1989).  A local government unit, however, may not be held responsible for the acts of its

18   employees or officials under a respondeat superior theory of liability.  See Bd. of County

19   Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  Thus, municipal liability must rest on the actions

20   of the municipality, and not of the actions of its employees or officers.  See id.  To assert

21   municipal liability, therefore, the plaintiff must allege that the constitutional deprivation

22   complained of resulted from a policy or custom of the municipality.  See id.  A claim of

23   municipal liability under § 1983 is sufficient to withstand dismissal even if it is based on nothing

24   more than bare allegations that an individual defendant's conduct conformed to official policy,

25   custom, or practice.  See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir.

26   1988).

                                                    4

1   Here, plaintiff does not allege that the actions of any individual officer was based

2 on any official policy, custom, or practice of either named defendant.  Absent such allegations,

3 plaintiff cannot state a claim against the municipality defendants.  However, even if plaintiff had

4 alleged that the municipality defendants had a policy, custom, or practice which was violating his

5 rights, the defendants have provided the court with the unopposed declaration of the Chief of

6 Police, Anthony Cardenas, establishing that there is in fact no "policy, custom, or practice of the

7 Corning Police Department or the City of Corning which acts to encourage, promote, establish,

8 sanction, condone, or tolerate action or conduct which denies, restricts, diminishes, or adversely

9 affects the constitutional rights of any citizen, including the plaintiff, or acts to deny any citizen

10 equal protection of the law."  (Declaration of Chief Cardenas, Doc. 27, at 4-5.)  In addition, Chief

11 Cardenas's declaration establishes that he has "never been instructed by the Corning City

12 Council to adopt any policy, custom or practice that would act to deny, restrict, diminish, or

13 adversely affect the constitutional rights of any citizen, or that would act to deny any citizen

14 equal protection of the law."  (Id. at 5.)  He further states that if an officer violates the written

15 policies and procedures of the police department, the officer's actions are investigated and

16 disciplinary action is taken.  (See id.)

17   The declaration of Chief Cardenas establishes that there are no policies or customs

18 of the defendant municipalities which result in any constitutional deprivation.  Plaintiff does not

19 dispute this fact.  The allegations in plaintiff's complaint are insufficient to dispute the

20 unopposed facts established by the defendants.  Accordingly, both the City of Corning and the

21 Corning Police Department should be granted summary judgment on this basis alone.

22   B.  CRIMINAL STATUES

23   Plaintiff states that the defendants have violated various criminal statutes,

24 including conspiracy (18 U.S.C. §§ 241 and 371), deprivation of rights (18 U.S.C. § 242),

25 damage to religious property (18 U.S.C. § 247), kidnaping (18 U.S.C. §§ 1201 and 1203),

26 malicious mischief (18 U.S.C. §§ 1362 and 1363), witness retaliation (18 U.S.C. § 1513),

5

1    sabotage (18 U.S.C. § 2153), terrorism (18 U.S.C. § 2331), and torture (18 U.S.C. § 2340).

2        The federal statutes plaintiff identifies are part of the criminal code.  Actions

3 brought under these provisions are to be brought by the United States government and they

4 contain no civil remedies for a private citizen.  See generally Diamond v. Charles, 476 U.S. 54,

5 64 (1986) (holding that private citizens cannot compel enforcement of criminal laws); see also

6 Allen v. Gold Country Casino, 464 F.3d 1044, 1048 (9th Cir. 2006) (holding that §§ 241 and 242

7 are criminal statues which do not give rise to civil liability); Keyter v. 230 Government Officers,

8 372 F. Supp. 2d 604, 610 (W.D. Wash. 2005) (citing Rockefeller v. U.S. Court of Appeals Office

9 for Tenth Circuit, 248 F. Supp. 2d 17, 22 (D.D.C. 2003), and stating that "private citizens are not

10 permitted to enforce criminal statutes or prosecute crimes"); Boisjoly v. Morton Thiokol, Inc.,

11 706 F. Supp. 795, 806 (D. Utah 1988) (concluding that there is no private right of action for

12 damages under § 1513); U.S. v. Johnson, 15 M.J. 676,682 n.5 (AFCMR 1983) (stating that §

13 2153 is applicable only during time of war or national emergency and "was meant to provide a

14 means for federal prosecution"); Strauss v. Credit Lyonnais, S.A., 249 F.R.D. 429, 432

15 (E.D.N.Y. 2008) (concluding that the Antiterrorism Act of 1992 provides civil remedies for

16 United State nationals injured in international terrorist attacks); Hooks v. Rich, 2006 WL

17 565909, *7 (S.D. Ga. 2006) (stating that there is no private right of action under § 2340).

18 Accordingly, any claim plaintiff is attempting to raise pursuant to these criminal provisions must

19 be dismissed.

20        C.     CONSTITUTIONAL VIOLATIONS

21        To the extent plaintiff is claiming his constitutional rights have been violated,

22 those allegations are difficult to understand.  He appears to assert violations based on freedom of

23 speech, freedom of religion, illegal search, and equal protection.  The District of Oregon also

24 found plaintiff may be alleging a violation of his Eighth Amendment rights.  It appears he is

25 claiming his Fourth Amendment rights were violated by a search conducted in 2004, and his First

26 Amendment rights to free speech were violated by the Corning Police Department's alleged

refusal to take police reports.  Plaintiff's claim that his rights under the Eighth and/or Fourteenth

Amendments are unclear, but may stem from his allegations of kidnaping, false imprisonment,

harassment, and destruction of police records.

Plaintiff's claims appear to relate to a dispute he had with his neighbor in Corning

and the actions of the Corning Police Department in relation thereto.  He alleges that, between

March 2006 and April 2007, he had continuing difficulties with his neighbor.  During that time

frame, the Corning Police Department was involved to the extent the officers took several police

reports from both plaintiff and his neighbor.  Plaintiff also alleges the police failed to take other

reports and failed to act on the reports that were taken.  He alleges the police harassed him,

including threatening that he "is going to do jail time," and was going to be declared "a town

nuisance." (Complaint at 5).  He further alleges that "dispatch tapes were destroyed by the order

of officer 211 an 207 Dyke an Kane [sic]" regarding a report he made of terrorist threats.

(Complaint at 6).  He also states that he "was arrested and falsely imprisoned by officers Bassit,

Kane, an Dyke [sic]" on February 5, 2007, and that he was "kidnapped [sic] and falsely

imprisoned." (Complaint at 6).

As discussed above, the caption of plaintiff's complaints lists as defendants the

City of Corning and the Corning Police Department only.  It is unclear whether plaintiff intended

the various individuals referenced in the complaint to also be named defendants.  Assuming for

the moment that he did, the officers would be entitled to qualified immunity as to the alleged

constitutional violations.

Government officials enjoy qualified immunity from civil damages unless their

conduct violates "clearly established statutory or constitutional rights of which a reasonable

person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general,

qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling upon the issue of qualified

immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting

the injury, the facts alleged show the defendant's conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established.  See id.  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ."  Id.  "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Id. at 202 (citation omitted).  Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right.  See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation.  See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995).  For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right."  See Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct.  See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have "reasonably but mistakenly believed that his . . . conduct did not violate the right."  Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

The first two steps in the qualified immunity analysis involve purely legal questions.  See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996).  The third inquiry involves a legal determination based on a prior factual finding as to the government official's conduct.  See

8

1    Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995).  In resolving these issues, the court must

2    view the evidence in the light most favorable to plaintiff and resolve all material factual disputes

3    in favor of plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

4            For purposes of this discussion, the court will assume plaintiff's complaint

5    satisfies the first two steps, although it is questionable whether he has satisfied the first

6    requirement of alleging facts which show the violation of a constitutional right.  Assuming the

7    first two requirements are met, the court will address the third – whether the officers could have

8    reasonably but mistakenly believed their conduct did not violate plaintiff's constitutional rights.

9            Plaintiff alleges his First, Fourth, Eighth, and Fourteenth Amendment rights were

10   violated.  Defendants have provided unopposed declarations from each individual officer

11   identified in the complaint.  These declarations clarify the contacts between the Corning police

12   officers and plaintiff.  The unopposed declarations provided to the court establish that the

13   officers could have reasonably but mistakenly believed their conduct did not violate plaintiff's

14   constitutional rights.  The officers' actions, in arresting plaintiff for disturbing the peace at a city

15   counsel meeting, detaining plaintiff pursuant to that arrest, and taking and investigating police

16   reports based on plaintiff's conflicts with his neighbors, were done in such a way that, assuming

17   a constitutional violation even occurred, a reasonable officer could have believed his conduct did

18   not violate plaintiff's constitutional rights.  The officers state that plaintiff's behavior at the city

19   counsel meeting on February 5, 2007, provided reasonable and adequate probable cause to arrest

20   him.  They also state that the arrest was accomplished without unnecessary force and resulted in

21   only a temporary deprivation or restriction of plaintiff's liberty.  The declarations show that the

22   officers acted in good faith.  Under these circumstances, any reasonable officer would have

23   believed that his conduct was lawful.  Accordingly, to the extent plaintiff intended the individual

24   officers to be named defendants, they are entitled to qualified immunity.  Leave to amend the

25   complaint would be futile, and should not be granted.

26   / / /

IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that defendants' motion for summary judgment be granted, judgment be entered, and this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


DATED: January 26, 2009

                                                                                      _____
                                                                                      **CRAIG M. KELLISON**
                                                                                      UNITED STATES MAGISTRATE JUDGE